662 A.2d 1062

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Edward BRACEY, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 17, 1994.

Decided July 21, 1995.

324

328

Daniel A. Rendine, Philadelphia, for E. Bracey.

Catherine Marshall, Ronald Eisenberg, Hugh J. Burns, Philadelphia, for Com.

Robert A. Graci, Harrisburg, for Atty. Gen.'s Office.

Before FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

We have before us an automatic direct appeal from the judgment of sentence of death and concurrent and consecutive terms of imprisonment imposed upon Appellant, Edward Bracey, by the Court of Common Pleas of Philadelphia County, Criminal Division.[1] On the record before us, we affirm the judgments of sentence imposed by the Court of Common Pleas of Philadelphia County, Criminal Division.

On February 3, 1992, Appellant was brought to trial by jury in connection with the shooting of Philadelphia Police Officer Daniel Boyle that occurred on February 4, 1991, and subsequently resulted in the death of Officer Boyle. The jury found Appellant guilty of murder of the first degree,[2] possessing an instrument of crime,[3] theft by receiving stolen property,[4] and criminal trespass.[5] A separate penalty hearing was held regarding the murder conviction. The jury found the existence of two aggravating circumstances[6] and no mitigating circumstances, and fixed Appellant's penalty at death. Appel-

---

**1.** See, 42 Pa.C.S. §§ 722(4), 9711(h)(1); Pa.R.A.P. 702(b) and 1941.

**2.** 18 Pa.C.S. § 2502(a).

**3.** 18 Pa.C.S. § 907.

**4.** 18 Pa.C.S. § 3925.

**5.** 18 Pa.C.S. § 3503(a).

**6.** (1) The victim was a police officer who was killed in the performance of his duties, 42 Pa.C.S. § 9711(d)(1); and (2) the defendant had a significant history of felony convictions involving the use or threat of violence to the person, 42 Pa.C.S. § 9711(d)(9).

lant was immediately sentenced by the trial court to death for the first degree murder conviction, and sentencing on the remaining convictions was deferred pending the filing and disposition of post-verdict motions. Post-trial motions were subsequently filed, argued and denied, and Appellant was sentenced on his remaining convictions to an aggregate period of incarceration of eleven to twenty-two years to run consecutively to the sentence of death.

■ As Appellant alleges insufficient evidence was presented to sustain his conviction for murder in the first degree we will begin our review of this case with a discussion of the evidence adduced at trial. The test for establishing sufficiency is whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all the elements of the offense(s) beyond a reasonable doubt. *Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217 (1986).

On February 4, 1991, Officer Boyle was operating his police cruiser during a search for robbery suspects and attempted to stop a stolen vehicle being operated by Appellant. Appellant failed to stop the stolen vehicle and eventually crashed it into a building. Appellant immediately jumped out of the vehicle and onto the hood and roof of Officer Boyle's cruiser while brandishing a 9mm automatic handgun. Appellant jumped off the vehicle and aimed his firearm at Officer Boyle while warning Officer Boyle not to touch his firearm. As this occurred Officer Boyle quickly attempted to remove his vehicle from the area, and Appellant rapidly discharged his firearm no less than eight times at Officer Boyle. One of these shots struck Officer Boyle in the right temple. Officer Boyle radioed that he had been shot. Upon the arrival of his fellow officers, Officer Boyle, although bleeding heavily and incapable of opening his eyes, said "the guy just got out and shot me." Officer Boyle died two days later.

Barry Smith, an individual who provided Appellant with the stolen vehicle and who allegedly exited the stolen vehicle seconds before the crash, identified Appellant as the shooter.

Numerous other witnesses, as well as physical evidence in the form of sneaker prints on the victim's police cruiser, also linked Appellant to the crime.

An intensive search was undertaken for Appellant. On February 6, 1991, the police were summoned by a woman complaining that a man had entered her residence through a skylight and set himself on fire. The police entered the residence and confronted Appellant on the second floor, "still smoldering." He was arrested and taken to the hospital where he was placed in intensive care in critical condition. The police did not interview Appellant until February 15, 1991, after being advised by physicians that Appellant was then well enough. During the interview, Appellant waived his *Miranda* rights,[7] and immediately confessed to shooting Officer Boyle. Thereafter, the police recovered the murder weapon, a 9mm Ruger P85 automatic handgun, which Appellant had disposed of in a sewer.

Appellant specifically argues that there was insufficient evidence that his actions were willful and premeditated because he was in great fear at the time he shot Officer Boyle. He claims that this fear existed because during the incident, which happened very quickly, Officer Boyle allegedly possessed a "Rambo" attitude, bumped Appellant's vehicle, tried to run Appellant down, and had drawn his firearm, as evidenced by the fact that the gun was found out of its holster. Appellant also claims to have emotionally shouted "don't do it, don't do it" at or about the time he opened fire at Officer Boyle. This claim also invokes principles of self-defense given the nature of the allegations.

In order to prove murder of the first degree the Commonwealth must show that a human being was unlawfully killed, that the accused committed the killing, *and that the killing was done in an intentional, deliberate and premeditated manner. Commonwealth v. Mitchell*, 528 Pa. 546, 599 A.2d 624 (1991). Specific intent to kill may be inferred from the

7. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

use of a deadly weapon upon a vital part of the victim's body. *Commonwealth v. Jones,* 530 Pa. 591, 610 A.2d 931 (1992). At trial the Commonwealth introduced overwhelming evidence that Appellant jumped from the vehicle he was operating brandishing a firearm, and then rapidly fired numerous bullets at Officer Boyle as Officer Boyle attempted to flee. One of the bullets struck Officer Boyle in the head. Thus, the jury had sufficient evidence from which it could reasonably conclude Appellant possessed the requisite specific intent to kill Officer Boyle. Moreover, the jury was free to disbelieve the evidence proffered by Appellant in support of claim of reduced intent and/or self-defense. *Commonwealth v. Edwards,* 521 Pa. 134, 555 A.2d 818 (1989). Thus, we conclude that Appellant's challenge that the evidence was insufficient to establish the requisite specific intent is without merit.

In addition to reviewing the sufficiency of the evidence in order to address Appellant's claim regarding the element of specific intent this Court has a duty to conduct an independent review to determine if the evidence is sufficient to sustain the underlying conviction for murder in the first degree in all cases where a sentence of death has been imposed. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26–27 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). Based upon our review of the evidence of record, as set forth above, we conclude that the Commonwealth sufficiently established that Officer Boyle died as the result of an unlawful shooting committed by Appellant in an intentional, deliberate and premeditated manner. *Commonwealth v. Mitchell,* 528 Pa. 546, 599 A.2d 624 (1991). Thus, we will now address Appellant's remaining claims of error and prejudice in connection with his trial.

Appellant's first set of challenges involve his written confession. Appellant asserts that: (1) the trial court erred in refusing to suppress his confession; (2) trial counsel was ineffective in failing to object to the instructions of the trial court concerning his confession; and (3) the trial court erred in refusing to redact portions of his confession that revealed

that he had armed himself with the intention of robbing drug dealers on the night of Officer Boyle's death. Upon review of these claims we conclude that they provide no basis for relief.

The record reflects that Appellant was hospitalized in critical condition immediately upon his arrest due to self-inflicted second and third degree burns over 39 percent of his body, and severe smoke inhalation, which necessitated surgeries and numerous drugs for sedation and pain. As a result of Appellant's physical condition, he was physically and mentally incapable of participating in police interrogation or arraignment until February 15, 1991. On February 15, 1991 Appellant's physician permitted the police to interview Appellant. Appellant expressly waived his *Miranda* rights, and immediately confessed to the murder of Officer Boyle. Appellant was not arraigned until February 19, 1991, which was the second work day following February 15, 1991, and the first time a bail commissioner was available to appear at the hospital. At trial, Appellant's confession was read into the record in its entirety by Philadelphia Police Detective Joseph Walsh. (N.T. 3/2/92 pp. 33–43).

Appellant initially argues that he should have been arraigned instead of interrogated by the police on February 15, 1991, because he was physically and mentally capable of being arraigned well before February 15, 1991. Thus, he reasons that his confession was the result of unnecessary delay between arrest and arraignment and must be suppressed. However, Appellant also argues in the alternative, that his physically weakened condition on February 15, 1991 rendered his confession involuntary.

It is well settled that an accused must be arraigned without unnecessary delay, and that any statement obtained as a result of unnecessary delay must be suppressed. *Commonwealth v. Williams*, 484 Pa. 590, 400 A.2d 1258 (1979). However, any period of delay attributable to an accused's impaired mental or physical condition is "necessary delay," and thus, must be excluded when determining whether a statement has been obtained as a result of "unnecessary

delay." *Id.* Moreover, if, under the totality of the circum-
stances, a confession by an accused is not voluntary because of
factors that overwhelmed his ability to exercise a reasoned
choice, it must be suppressed. *Commonwealth v. Webb,* 491
Pa. 329, 421 A.2d 161 (1980). However, a decision of the
suppression court will not be reversed where the factual
findings and the legal conclusions drawn therefrom are sup-
ported by the record. *Commonwealth v. Brundidge,* 533 Pa.
167, 620 A.2d 1115 (1993).

▆ Upon review of the record in this matter we find
overwhelming support for the conclusion of the trial court that
Appellant was in no condition to be interviewed by the police
or arraigned until February 15, 1991. Therefore, any delay
until February 15, 1991 was necessary and must be excluded
when determining whether his confession was obtained as a
result of unnecessary delay prior to arraignment. Once this
necessary delay is excluded it becomes obvious that Appel-
lant's confession could not be deemed the product of unneces-
sary delay prior to Appellant's confession or arraignment.
The police received permission to conduct an interview on
February 15, 1991, and upon exercising their first opportunity
to interview Appellant, he immediately began to confess his
crimes.

▆ The record also clearly supports the conclusion of the
trial court that Appellant failed to demonstrate the existence
of further factors at the time of his confession that would
warrant suppression. Appellant was interviewed with his
physician's approval, and he was made as comfortable as
possible during the interview. Appellant was stable, alert,
coherent and cooperative, and he expressly understood and
waived his Miranda rights. The record is devoid of any
evidence that Appellant's powers of resistance to suggestion
were weakened or that his self determination was undermined,
and there is absolutely no evidence of police coercion. Thus,
we find no basis upon which to conclude that Appellant lacked
the ability to exercise a reasoned choice at the time of his

confession. Accordingly, we conclude that Appellant's confession was properly admitted by the trial court.

 Appellant's next complaint with regard to his confession is addressed to trial counsel's failure to object to the manner in which the trial court instructed the jury with regard to his confession. Appellant claims the instruction invaded the sole province of the jury to determine whether the statement was obtained as a result of unnecessary delay.[8] Specifically, Appellant challenges trial counsel's failure to object to the following portion of the relevant instructions of the trial court:

> There's been some issue here raised about alleged delay in the defendant's being arraigned. That's when he's brought before the magistrate and told what the charges are. You heard the reasons for that delay, that the defendant was allegedly being treated and doctors would not permit him to be questioned. The law does not require, under those circumstances, that a physician give way his physical opinion and that the person be questioned, *because the physician obviously controls that situation.* As I said, the requirement of the law with reference to that is that the defendant be advised of his right to counsel, and he has the right to give up that right to counsel.

N.T. 3/3/91, p. 27. (emphasis added). Appellant asserts that this statement by the trial court that the opinion of Appellant's physician controls the situation essentially told the jury that there was no unnecessary delay in obtaining the confession.

 A verdict will not be set aside if the instructions of the trial court, taken as a whole, and in context, accurately set

---

**8.** In order for Appellant to prevail on a claim of ineffectiveness of trial counsel, he must demonstrate that: (1) the underlying claim is of arguable merit; (2) the particular course chosen by counsel did not have some reasonable basis designed to effectuate his interests; and (3) counsel's ineffectiveness prejudiced him. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987). Counsel can never be found ineffective for having elected not to raise a meritless claim. *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknis,* 491 Pa. 215, 420 A.2d 419 (1980). Moreover, we begin with the presumption that trial counsel was not ineffective. *Commonwealth v. Miller,* 494 Pa. 229, 431 A.2d 233 (1981).

forth the applicable law. *Commonwealth v. Prosdocimo,* 525 Pa. 147, 578 A.2d 1273 (1990); *Commonwealth v. Ohle,* 503 Pa. 566, 470 A.2d 61 (1983), *cert. denied,* 474 U.S. 1083, 106 S.Ct. 854, 88 L.Ed.2d 894 (1986).

The trial court's instruction that the opinion of Appellant's physician controls the situation was a correct statement of the law. It correctly informed the jury that if, based upon the evidence presented, it found that the physician had precluded the police from obtaining the statement or arraigning Appellant, that such delay would be deemed necessary in determining whether Appellant's confession was voluntary. *Commonwealth v. Williams,* 484 Pa. 590, 400 A.2d 1258 (1979). Contrary to Appellant's assertions, this instruction in no manner whatsoever told the jury that they must believe that the physician precluded a police interview or the arraignment of Appellant. Rather, when the trial court's instruction is viewed as a whole, it is clear that this decision was left completely up to the jury. The trial court correctly and comprehensively charged the jury on the law applicable to the jury's evaluation of Appellant's confession, and did not invade the province of the jury with regard to this determination.[9]

Appellant's challenge in actuality amounts to no more than a complaint that the jury was left with no alternative but to find that his confession was not the result of unnecessary delay given the overwhelming evidence of record that he was physically incapable of being arraigned or interviewed, and that his physician had precluded such, until February 15, 1991 when he gave his statement to the police. However, the mere existence of overwhelming evidence that his physician precluded interview and arraignment provides no basis upon which to

9. In advancing this claim Appellant ignores the remaining portions of the rather lengthy instruction of the trial court on this concept comprising six pages of the trial transcript. Through this instruction the trial court outlined for the jury all of the inquiries relevant to its evaluation of Appellant's confession. It then charged the jury that it should weigh all of the facts and circumstances surrounding the alleged making of the statement when making its evaluation, and concluded its instruction by indicating that it was for the jury to apply these principles and render a decision with regard to the weight to be accorded Appellant's confession.

conclude that the trial court invaded the province of the jury in instructing the jury on this concept in accordance with the law. As this claim possesses no arguable merit, trial counsel cannot be deemed ineffective for failing to object to this portion of the instructions of the trial court. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknis*, 491 Pa. 215, 420 A.2d 419 (1980); *Commonwealth v. Miller*, 494 Pa. 229, 431 A.2d 233 (1981).

Appellant's final claim with regard to his confession is that the trial court erred in refusing to redact a portion of his confession that revealed that he had armed himself with the intention of robbing drug dealers on the evening in question, which he claims was irrelevant and prejudicial evidence of other crimes.

Unquestionably, the admission or exclusion of evidence is within the sound discretion of the trial court, and the admission of such evidence is justified so long as the need for the evidence outweighs the potential prejudice. *Commonwealth v. Banks*, 513 Pa. 318, 521 A.2d 1 (1987), *cert. denied*, 484 U.S. 873, 108 S.Ct. 211, 98 L.Ed.2d 162 (1987). *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978). This Court recently addressed the admissibility of other crimes evidence in *Commonwealth v. Ragan*, 538 Pa. 2, 645 A.2d 811 (1994) as follows:

> The often-stated rule in Pennsylvania governing evidence of other crimes is that such evidence is not admissible solely to show a defendant's bad character or propensity for continuing criminal acts. *Commonwealth v. Seiders*, 531 Pa. 592, 614 A.2d 689 (1992). However, not all references which may indicate prior criminal acts warrant reversal. Mere passing references "to prior criminal activity will not require reversal unless the record illustrates definitively that prejudice resulted from the reference." *Commonwealth v. Nichols*, 485 Pa. 1, 4, 400 A.2d 1281, 1282 (1979). In addition, it is also well established that evidence of other crimes may be admitted where there is a legitimate evidentiary purpose for such evidence. Some of the exceptions

recognized by this court for the admission of such evidence "include, but are not limited to, 1) motive; 2) intent; . . ." *Id.* at 19, 645 A.2d at 819.[10]

 Appellant contends that the challenged evidence falls within none of the exceptions to the general rule concerning the admissibility of other crimes evidence. We disagree. This evidence was relevant to rebut Appellant's claim of reduced intent. At trial, defense counsel argued vehemently that Appellant did not possess the requisite specific intent to kill Officer Boyle because of alleged fear generated by the conduct of Officer Boyle, which rendered Appellant's conduct not willful and premeditated. While Appellant did not testify at trial, in support of this argument defense counsel relied on numerous portions of Appellant's confession indicating that he shot Officer Boyle out of fear. Given the nature of this claim of reduced intent, we believe that the Commonwealth was entitled to utilize Appellant's own statements that he had armed himself in order to rob others to rebut his contention that while he was afraid when he shot Officer Boyle.

In addressing this type of claim this Court has often cited *McCormick*, Evidence, § 190 (1972 2nd ed.),[11] wherein it is recognized that:

Two considerations, one substantive and the other procedural, affect the ease or difficulty of securing admission of proof of other crimes. The first is that the courts are stricter in applying their standards of relevancy when the ultimate purpose of the state is to prove identity, or the

10. We note that Appellant's characterization of the challenged evidence as evidence of another crime is technically incorrect where such evidence only conveyed Appellant's general plan to commit robberies as opposed to the actual commission thereof. This Court has held that "[t]o warrant a characterization as prejudicial the testimony must convey to the jury, either expressly or by reasonable implication, the fact of a prior criminal offense." *Commonwealth v. Glass*, 495 Pa. 405, 408, 434 A.2d 707, 709 (1981), *cert. denied*, 456 U.S. 932, 102 S.Ct. 1984, 72 L.Ed.2d 450 (1982). Nevertheless, we feel compelled to employ an "other crimes" analysis given the nature of the evidence which could have reasonably have led the jury to infer prior criminality on the part of Appellant or general bad character.

11. *Commonwealth v. Rush*, 538 Pa. 104, 646 A.2d 557 (1994).

doing by the accused of the criminal act charged than they are when the evidence is offered on the ultimate issue of knowledge, intent or other state of mind. The second is that when the crime charged involves the element of knowledge, intent, or the like, the state will often be permitted to show other crimes in rebuttal, after the issue has been sharpened by the defendant's giving evidence of accident or mistake, more readily than it would as part of its case in chief at a time when the court may be in doubt that any real dispute will appear on the issue.

*Id.* at 452.

Quite obviously, in the matter *sub judice* the challenged evidence could not have prejudiced Appellant by establishing his identity as the perpetrator where his defense was not one of innocence but rather one of degree of guilt. Thus, we are left only with a question of balancing whether the risk of prejudice from this limited evidence of Appellant's bad character and disposition outweighed its probative value in connection with the clearly existing dispute as to Appellant's state of mind at the time he shot Officer Boyle. This inquiry is rendered more difficult given the existence of the Commonwealth's ability to establish the requisite specific intent through inference based upon Appellant's use of a deadly weapon upon a vital part of Officer Boyle's body. However, it must also be reiterated that our decision does not turn solely upon the ascertainment and application of a rule, but must be rendered in light of the well-recognized discretion of the trial court. After careful consideration we conclude that the trial court did not abuse its discretion in permitting the jury to learn that Appellant had armed himself to rob drug dealers, which permitted the jury to more accurately assess Appellant's claim of fear in light of the evidence that he may have been, in essence, less subject to fear.

Undoubtedly, the mere fact that one may be less susceptible to fear does not necessarily mean that he was not overcome by fear sufficient to reduce his culpability on a particular occasion. However, we believe that where Appellant aggressively advanced a claim of reduced intent, evidence that he armed

himself in order to rob drug dealers was sufficiently intertwined with the contention of fear underlying the claim of reduced intent so as to render it relevant to the ultimate question before the jury of whether Appellant possessed the specific intent required to support a conviction of murder in the first degree. Moreover, Appellant has failed to specifically argue how he was prejudiced by the admission of this limited evidence, and we find no basis upon which to conclude that the trial court erred in determining that any potential for prejudice was outweighed by the probative value of this evidence. *Commonwealth v. Ragan*, 538 Pa. 2, 645 A.2d 811 (1994).

Finally, even if we were to conclude that the evidence was improperly admitted, given the overwhelming evidence of guilt and the limited potential for prejudice it would be clear beyond a reasonable doubt that any such error could not have contributed to the verdict. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978); *Commonwealth v. Foy*, 531 Pa. 322, 612 A.2d 1349 (1992).[12] Accordingly, this claim is denied.

Based upon the foregoing, we conclude that Appellant has advanced no claim in connection with the admission of his confession sufficient to warrant reversal.

Appellant's remaining claim of trial court error involves an assertion that the trial court erred when it refused to grant a mistrial in response to a hearsay statement elicited from Commonwealth witness Steven Curry.

**12.** In *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978), this Court determined that "an error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." *Id.* at 406, 383 A.2d at 162. Error is considered harmless where: (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and "the uncontradicted evidence of guilt must be so overwhelming, and the prejudicial effect of the improperly admitted evidence so insignificant by comparison, that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict." *Id.* at 410–15, 383 A.2d at 164–66. See *Commonwealth v. Foy*, 531 Pa. 322, 612 A.2d 1349 (1992).

■ A motion for mistrial based on inadmissible hearsay is addressed to the sound discretion of the trial court, and a mistrial is required only when an incident is of such nature that its unavoidable effect is to deny the defendant a fair trial. *Commonwealth v. Hernandez*, 498 Pa. 405, 446 A.2d 1268 (1982); *Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811 (1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986); *Commonwealth v. Heaton*, 504 Pa. 297, 472 A.2d 1068 (1984); *Commonwealth v. Marshall*, 523 Pa. 556, 568 A.2d 590 (1989).

■ The record reveals that the Commonwealth presented the testimony of Mr. Curry to establish that he was operating a vehicle in which Appellant was riding when he disposed of the murder weapon in a sewer. In connection with this line of questioning Mr. Curry, somewhat non-responsively, stated "well Chop came to me and said, you know some boy name Ed took and shot a cop." (N.T. 2/26/92, p. 86). The trial court properly sustained an objection to this hearsay statement. However, we conclude that the potential for prejudice from this statement was limited since it served only to identify Appellant as the shooter, which comported with Appellant's defense at trial involving degree of guilt rather than innocence. Moreover, immediately after sustaining the objection the trial court gave a curative instruction, which cured any potential for prejudice. *Commonwealth v. Marshall*, 523 Pa. 556, 568 A.2d 590 (1989). Accordingly, we conclude that this incident did not have the unavoidable effect of denying Appellant a fair trial, and thus, the trial court did not abuse its discretion in denying Appellant's motion for a mistrial advanced on this basis. *Commonwealth v. Hernandez*, 498 Pa. 405, 446 A.2d 1268 (1982); *Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811 (1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986); *Commonwealth v. Heaton*, 504 Pa. 297, 472 A.2d 1068 (1984); *Commonwealth v. Marshall*, 523 Pa. 556, 568 A.2d 590 (1989).

All of Appellant's remaining claims involve allegations of ineffectiveness of trial counsel. In order for Appellant to prevail on a claim of ineffectiveness of trial counsel, he must

demonstrate that: (1) the underlying claim is of arguable merit; (2) the particular course chosen by counsel did not have some reasonable basis designed to effectuate his interests; and (3) counsel's ineffectiveness prejudiced him. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). Counsel can never be found ineffective for having elected not to raise a meritless claim. *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknis*, 491 Pa. 215, 420 A.2d 419 (1980). Moreover, we begin with the presumption that trial counsel was not ineffective. *Commonwealth v. Miller*, 494 Pa. 229, 431 A.2d 233 (1981).

Appellant first claims that trial counsel was ineffective in failing to object to alleged "emotional outbursts" in the courtroom. Specifically, Appellant complains that the victim's stepmother was crying in the courtroom, that Appellant's girlfriend was crying on the witness stand, and that the victim's father, also a member of the Philadelphia Police Department, was extremely distraught while on the witness stand. In support of this claim Appellant argues little more than that the emotional outbursts allegedly occurred, and upon review of the record it is apparent that Appellant has misrepresented the record in order to support this clearly meritless claim.

 Whether and to what extent relief is due from an incident such as an emotional outburst in the courtroom is within the discretion of the trial court, and unless the unavoidable effect of the incident is to deny the defendant a fair trial, there is no error. *Commonwealth v. Hernandez*, 498 Pa. 405, 446 A.2d 1268 (1982); *Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811 (1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986); *Commonwealth v. Heaton*, 504 Pa. 297, 472 A.2d 1068 (1984).

 The record reveals no conduct on the part of Officer Boyle's stepmother that would warrant the granting of a mistrial. While the record does reflect that trial counsel complained to the trial court out of the presence of the jury that the victim's stepmother was crying, the trial court noted on the record that the woman was crying very softly and

offered to have her removed. Appellant's counsel indicated that such would not be necessary. However, in an abundance of caution, the trial court indicated that it would recess to permit the victim's stepmother to regain her composure out of the presence of the jury. There is no indication in the record that this individual posed any further concern for the trial court. Thus, we find no basis upon which to conclude that this minor occurrence amounted to what Appellant describes as an outburst, or that the incident, even if noticed by the jury, prejudiced Appellant in any manner.

With regard to Appellant's claim that his girlfriend was crying, such was, if anything, harmful to the Commonwealth since it was the product of her obvious affection for Appellant, and noticeably occurred only while she was being examined by the Commonwealth. Finally, while the record does reflect that Officer Boyle's father had emotional difficulty testifying in this matter, such testimony was limited and moved along quickly by the trial court in response to what it described as a "quiet sort of thing." [13]

Accordingly, we find no basis upon which to conclude that the unavoidable effect of these minor occurrences was to deny Appellant a fair trial. As this claim is meritless, trial counsel

13. We note that with particular reliance upon this alleged emotional outburst Appellant further asserts that trial counsel was ineffective in failing to object to the entire testimony of the victim's father as irrelevant and offered only to inflame the passions and prejudices of the jury. However, the record plainly reveals that such testimony was unquestionably relevant to establish that Officer Boyle was a life-in-being. Moreover, as Officer Boyle's un-fired handgun was found to his right on the seat of the police cruiser, this testimony was further relevant to establish that his son was left-handed, and thus, was not threatening the use of force in order to rebut Appellant's claim of reduced intent and self defense. *Commonwealth v. Rivers*, 537 Pa. 394, 644 A.2d 710 (1994); *Commonwealth v. Scoggins*, 466 Pa. 355, 353 A.2d 392 (1976). The record further reveals that such testimony was not merely cumulative as claimed by Appellant. Moreover, Appellant has failed to sufficiently argue how, and there exists no basis upon which to conclude that, he was prejudiced by this testimony. Accordingly, trial counsel was not ineffective on the basis of this claim. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknis*, 491 Pa. 215, 420 A.2d 419 (1980); *Commonwealth v. Miller*, 494 Pa. 229, 431 A.2d 233 (1981).

cannot be deemed ineffective. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknis,* 491 Pa. 215, 420 A.2d 419 (1980); *Commonwealth v. Miller,* 494 Pa. 229, 431 A.2d 233 (1981).[14]

■ Appellant next claims that trial counsel was ineffective in failing to object to the Commonwealth's reference to an alleged prior inconsistent oral statement of its witness, Arthur Berry, in violation of *Commonwealth v. Lively,* 530 Pa. 464, 610 A.2d 7 (1992). In *Lively,* this Court limited the use of prior inconsistent statements as substantive evidence to three situations: (1) when the statement is given under oath at a formal legal proceeding; or (2) the statement was reduced to writing and signed and adopted by the witness; or (3) the statement is a contemporaneous, verbatim recording of the witnesses' statements. *Id.* at 471, 610 A.2d at 10.

Arthur Berry, who resided with Appellant's sister, aided Appellant in disposing of the murder weapon shortly after the crime. Prior to trial Berry gave a statement to the police that he was present when Appellant brought a gun case to his sister's home in order to dispose of it. Berry also stated that he had opened the case after Appellant had given it to him and it contained a 9 mm handgun, which he described to the police. However, at trial the prosecutor had difficulty in eliciting this information from Berry, who was described as hostile by the trial court. The inconsistent, or at least ambiguous, nature of Berry's testimony on this subject could have easily led the jury to believe that Appellant had appeared with only an empty gun case.

In order to clarify the situation the prosecutor provided Berry with a copy of his previous statement to the police obtained at the homicide division of the Philadelphia Police

14. We note that in connection with this claim Appellant also alleges that the trial court erred in refusing to *sua sponte* declare a mistrial on the basis of the alleged "emotional outbursts." Based upon our disposition of this issue we find no basis upon which to conclude that the trial court should have declared, *sua sponte,* a mistrial in response to these incidents.

Department, which was reduced to writing and signed by Berry after being afforded an opportunity to review the writing and to make corrections. Berry reviewed this statement and admitted that it was his statement. When asked if the police statement refreshed his recollection that he had opened the gun case, seen what was in it, and described the gun to the police, Berry indicated that he had not opened the case and had not told the police that he had done so. In response, the prosecutor asked Berry if he remembered telling her a few weeks before that he had opened the gun case, and Berry responded that he had not told the prosecutor that he had opened the case. Thereafter, the relevant portion of Berry's statement to the police was properly admitted by the trial court. *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986). Appellant raises no objection with regard to the statement Berry made to the police. Rather, it is the prosecutor's reference to what Berry had allegedly said to her in her office a few weeks before to which Appellant objects.

Appellant asserts that the prosecutor's question as to what Berry had told her a few weeks before was an improper vehicle for impeachment because the alleged oral pre-trial statement satisfied none of the requirements of *Lively*. We agree. However, we conclude that Appellant could not have been prejudiced by this limited reference by the prosecutor where the Commonwealth elicited the same evidence through reference to Berry's statement to the police. Appellant advances this claim without acknowledging the prosecutor's use of Berry's statement to the police, and fails to explain how he could have been prejudiced by the limited reference by the prosecutor to his alleged oral statement in light of the Commonwealth's use of his police statement. Accordingly, trial counsel cannot be deemed ineffective for failing to object. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknis*, 491 Pa. 215, 420 A.2d 419 (1980); *Commonwealth v. Miller*, 494 Pa. 229, 431 A.2d 233 (1981).

Appellant next claims that trial counsel was ineffective in failing to object to a portion of the Assistant District Attor-

ney's closing argument during the guilt phase of Appellant's trial. In support of this claim, Appellant refers to the following statements by the prosecutor:

I submit to you, ladies and gentlemen, that the only reason Danny Boyle is dead is because he was a police officer, and he was serving all of us, and he was out there doing his job, and for no other reason. There are many victims in this case. There's Danny Boyle himself, who never got to grow up, who never got to have a family, there's his family and friends who'll never see him again, and there's all of us and all of the citizens of this city, who lost a dedicated police officer who wanted nothing more than to be a police officer like his dad.

N.T. 3/2/92, p. 143.

In order for Appellant to prevail on this claim he must first establish the existence of prosecutorial misconduct warranting an objection by trial counsel. It is well settled that the prosecutor is permitted wide latitude in making argument to the jury. *Commonwealth v. Chester,* 526 Pa 578, 587 A.2d 1367 (1991), *cert. denied,* 502 U.S. 959, 112 S.Ct. 422, 116 L.Ed.2d 442 (1991). Guidelines governing the review of allegedly improper remarks made by a prosecutor during argument were set forth in *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983):

The primary guideline in assessing a claim of error of this nature is to determine whether the unavoidable effect of the contested comments was to prejudice the jury, forming in their minds fixed bias and hostility towards the accused so as to hinder an objective weighing of the evidence and impede the rendering of a true verdict. In making such a judgment, we must not lose sight of the fact that the trial is an adversary proceeding, Code of Professional Responsibility (Canon 7 E.C. 7–19—7–39), and the prosecution, like the defense, must be accorded reasonable latitude in fairly presenting its version of the case to the jury. Nevertheless, we do require that the contentions advanced must be con-

fined to the evidence and the legitimate inferences to be drawn therefrom. Deliberate attempts to destroy the objectivity and impartiality of the finder of fact so as to cause the verdict to be a product of the emotion rather than reflective judgment will not be tolerated. The verdict must flow from the respective strengths and weaknesses of the evidence presented and not represent a response to inflammatory pleas for either leniency or vengeance.

*Id.* at 53, 454 A.2d at 956 [citations omitted]. See also, *Commonwealth v. Chester,* 526 Pa. 578, 587 A.2d 1367 (1991), *cert. denied,* 502 U.S. 959, 112 S.Ct. 422, 116 L.Ed.2d 442 (1991); *Commonwealth v. Banks,* 513 Pa. 318, 521 A.2d 1 (1987), *cert. denied,* 484 U.S. 873, 108 S.Ct. 211, 98 L.Ed.2d 162 (1987); *Commonwealth v. Carpenter,* 511 Pa. 429, 515 A.2d 531 (1986); *Commonwealth v. Whitney,* 511 Pa. 232, 512 A.2d 1152 (1986).

With these principles in mind, we conclude that the Assistant District Attorney did not deliberately seek to destroy the objectivity of the fact finder through the portion of her closing argument challenged by Appellant. We further conclude that her argument did not have the "unavoidable effect" of prejudicing the jury, forming in their minds a fixed bias and hostility towards Appellant so that they could not weigh the evidence objectively and render a true verdict. This limited portion of a lengthy and comprehensive argument by the Assistant District Attorney was reasonably based upon the evidence presented at trial and the reasonable inferences therefrom, and merely exhibited a degree of oratorical flair, license and passion that was permissible during her arguments to the jury. *Commonwealth v. Chester,* 526 Pa 578, 587 A.2d 1367 (1991), *cert. denied,* 502 U.S. 959, 112 S.Ct. 422, 116 L.Ed.2d 442 (1991). As the prosecutor did not exceed the bounds of reasonable advocacy, trial counsel cannot be deemed ineffective for failing to object on the basis of prosecutorial misconduct. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknis,* 491 Pa. 215, 420 A.2d 419 (1980); *Commonwealth v. Miller,* 494 Pa. 229, 431 A.2d 233 (1981).

■ Appellant next claims that trial counsel was ineffective in failing to object during the penalty phase of his trial to the admission of evidence from co-workers that the victim was a good and dutiful police officer, which he claims was not relevant to any aggravating or mitigating circumstance sought to be proven by the Commonwealth. We disagree.

During the guilt phase of his trial Appellant sought to portray Officer Boyle as a police officer possessing a "Rambo" attitude who had allegedly attempted to run Appellant down with a vehicle and threatened to shoot him, which Appellant claimed caused him to react in great fear, thus reducing his culpability. The thrust of this characterization of Officer Boyle was that Officer Boyle was acting beyond the authority of his duties with the Philadelphia Police Department. Appellant also relied primarily upon these assertions in support of his claims of mitigation during the penalty phase of his trial, which he advanced in an effort to avoid imposition of a sentence of death. Specifically, Appellant argued that his fear resulting from the alleged conduct of Officer Boyle established the following mitigating circumstances: Appellant was under the influence of extreme mental or emotional disturbance; Appellant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired; Appellant's age of twenty-eight years at the time of the crime; and any other evidence of mitigation concerning Appellant's character and record and the circumstances of his offense. 42 Pa.C.S. § 9711(e)(2), (3), (4) and (8).

In response, the Commonwealth introduced evidence to show that Officer Boyle was a good and dutiful police officer in order to refute Appellant's claims of mitigation based upon his alleged fear. The Commonwealth utilized this evidence to argue that upon being confronted by Officer Boyle, Appellant did not manifest fear that would mitigate his crime, but rather, had aggressively attacked Officer Boyle by initially charging the police cruiser with gun drawn and then delivering a fusillade as his victim attempted to retreat. Thus, the challenged evidence went directly to Appellant's claims of

reduced culpability in mitigation of his crime, and was directly relevant to the question of the sentence to be imposed by the jury. Any potential for prejudice to Appellant was outweighed by the probative value of this evidence. Accordingly, we conclude that this claim is meritless, and thus, trial counsel cannot be deemed ineffective. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknis*, 491 Pa. 215, 420 A.2d 419 (1980); *Commonwealth v. Miller*, 494 Pa. 229, 431 A.2d 233 (1981).

Based upon the foregoing we conclude that Appellant has advanced no claim of ineffectiveness of trial counsel warranting reversal.[15]

 Finally, pursuant to 42 Pa.C.S. § 9711(h)(3), we have the duty to affirm the sentence of death unless we determine that:

**15.** We note that Appellant has raised two additional claims of ineffectiveness of trial counsel that clearly provide no basis for relief. Trial counsel was not ineffective in failing to object to an allegedly inflammatory photograph of Officer Boyle in his police car after the shooting where our review of the record, together with counsels' subsequent acknowledgment, reveals that such a photograph does not exist, and certainly was not introduced at trial. Trial counsel was also not ineffective in failing to object to the accurate instruction of the trial court that the crime of burglary is a crime of violence as a matter of law. *Commonwealth v. Baker*, 531 Pa. 541, 614 A.2d 663 (1992); *Commonwealth v. Rolan*, 520 Pa. 1, 549 A.2d 553 (1988). Despite this instruction the jury nevertheless retained discretion to determine whether Appellant's prior convictions for burglary amounted to a "significant history," and thus, whether the Commonwealth had proven the aggravating circumstance of a significant history of violent felony convictions beyond a reasonable doubt. 42 Pa.C.S. § 9711(d)(9). Moreover, invalidation of this aggravating circumstance would not warrant reversal, as the death penalty remains warranted based upon the jury's finding of an additional aggravating circumstance and no mitigating circumstances. *Commonwealth v. Stokes*, 532 Pa. 242, 615 A.2d 704 (1992).

We further note that in advancing his claims of ineffectiveness of trial counsel Appellant has presented a generalized request, in the alternative, that this Court remand this matter to the trial court for a hearing in connection with such claims. Given the nature of Appellant's claims, the evidence of record, and the manner in which we have disposed of such claims, we find that Appellant has advanced no reasonable basis upon which to remand this matter for an evidentiary hearing in connection therewith.

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

Upon such review, we find that the sentence imposed was not the product of passion, prejudice or any other arbitrary factor. We also find that the evidence was sufficient to establish the two aggravating factors found by the jury. Specifically, the jury found that the victim was a police officer who was killed in the performance of his duties, and Appellant had a significant history of felony convictions involving the use or threat of violence to the person. 42 Pa.C.S. § 9711(d)(1) and (9).[16]

In addition, after reviewing the information compiled by the Administrative Office of Pennsylvania Courts in accordance with the requirements set forth in *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700 (1984), *cert. denied*, 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984), we do not find the sentence imposed upon Appellant to be excessive or disproportionate to the penalty imposed upon defendants in similar cases.

Accordingly, we affirm the Judgment of Sentence of death imposed upon Appellant, Edward Bracey, by the Court of Common Pleas of Philadelphia County, Criminal Division.[17]

Judgment of Sentence affirmed.

**16.** The record clearly establishes that the victim, Officer Boyle, was a member of the Philadelphia Police Department and was killed in the performance of his duties. The record further establishes that at the time of the trial herein Appellant had been convicted of the felony of burglary on two separate occasions.

**17.** The Prothonotary of the Supreme Court is directed to transmit, as soon as possible, the full and complete record of the case *sub judice* to the Governor of Pennsylvania. 42 Pa.C.S. § 9711(i).

351

NIX, C.J., did not participate in the consideration or decision in this case.

PAPADAKOS, J., did not participate in the decision of this case.

MONTEMURO, J., is sitting by designation.