698 A.2d 56

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Roland ERNEY, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 17, 1996.

Decided July 23, 1997.

Stephen H. Shantz, Peter C. Hall, Ann P. Russavage–Faust, Doylestown, for Roland Erney.

Karen Diaz, Doylestown, Stephen B. Harris, Warrington, for Commonwealth.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## *OPINION*

CASTILLE, Justice.

The sole issue raised on appeal is whether the victim in this case was "unconscious" within the meaning of 18 Pa.C.S. § 3121(3) so as to render the evidence sufficient to support appellant's conviction for rape of an unconscious victim. We conclude that there was sufficient evidence to find that the victim was unconscious and therefore affirm.

On March 9, 1993, following a jury trial in Bucks County, appellant was convicted of rape (unconscious victim),[1] aggravated indecent assault,[2] and corruption of minors,[3] for the

1. 18 Pa.C.S. § 3121(3)
2. 18 Pa.C.S. § 3125
3. 18 Pa.C.S. § 6301

sexual assault of a teenaged girl who was so intoxicated at the time as to be both unaware of portions of the incident and unable to consent to sexual intercourse or to resist appellant's assault. Appellant filed post-verdict motions, which the trial court denied on August 31, 1993. Sentencing was scheduled for October 1, 1993, but was continued because appellant, who had a history of mental illness, was found to be incompetent. On January 13, 1995, after appellant regained his competency, the trial court sentenced him to a mandatory sentence of five to ten years imprisonment. *See* 42 Pa.C.S. § 9718 (relating to rape of a person under sixteen years of age).

On appeal to the Superior Court, appellant argued that, because the victim was able to describe with considerable detail certain sexual activity giving rise to these charges, including penetration and intercourse, she was necessarily conscious and, therefore, the evidence was insufficient to support his conviction for rape under 18 Pa.C.S. § 3121(3) (unconscious victim). The Superior Court affirmed. We granted allocatur to address the meaning of "unconscious" under 18 Pa.C.S. § 3121(3).

The evidence adduced at trial established that on an evening during late December, 1991, the victim in this case, fifteen-year old J.R., accompanied her friend, Timothy Beck, to the home of appellant, who was then thirty-three years old. While there, appellant provided marijuana and alcohol to J.R., Beck, and another young man who was friendly with appellant, Duane Weiser. Appellant particularly encouraged J.R. to consume marijuana, at times refusing to allow her to "pass the joint" to others. Eventually, J.R. became so intoxicated as to be unable to move or speak. Indeed, eyewitness Beck described her as incoherent, "not paying any attention to anything that was going on around her," and like "a vegetable." It was at that point that appellant, while on the floor of his second floor bedroom, began fondling J.R.'s breasts and vagina. Beck observed this activity and informed appellant that J.R. was only fifteen years old, to which appellant replied that he has a daughter that age and that J.R. reminded him of his daughter. Appellant then ripped down J.R.'s pants and pro-

ceeded to engage in sexual intercourse with her. J.R. testified that throughout the assault, she attempted to tell appellant to stop and believed that she, using her loudest possible voice, did indeed do so. However, the only sound audible from J.R. to the listeners was unintelligible mumbling. Beck questioned J.R. during the assault in an attempt to determine whether she was "okay," but J.R. was wholly unable to respond. The young victim testified that she was unaware of the duration of the assault and for what reason the assault ceased. According to her testimony, appellant just stopped. In fact, appellant ceased the assault when Beck, who had repeatedly told appellant to stop and had stated that he was going to awaken appellant's mother (who was asleep in another bedroom), finally threatened to call police and prepared to leave the premises to do so. J.R. could not recall putting on her pants, but she eventually dressed to leave the residence. Unable to walk, she slid down the stairs and, after sitting for a while in appellant's living room, left the premises with Beck.

The following day, J.R., who was uncertain as to whether the assault had actually occurred, confirmed the events with Beck. She also spoke to appellant on the telephone, and he told J.R. that she had gotten what she deserved. During a subsequent telephone call to J.R.'s home, appellant repeatedly chanted to J.R's mother that the victim "got what she deserved because women are evil and [they] all get what [they] deserve."

When interviewed by police, appellant first acknowledged that the victim was at his home at the time of the crime and that they had smoked marijuana. He later stated that the victim was never even there, and that no females other than family members had been in his home for over two years.

■ Appellant contends that this evidence is insufficient to support his conviction under 18 Pa.C.S. § 3121(3), which at the time of the crime, provided that:

A person commits a felony of the first degree when he engages in sexual intercourse with another not his spouse:

* * *

(3) who is unconscious . . .

It is axiomatic that, in considering a sufficiency claim, this Court must

> [V]iew the evidence in the light most favorable to the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict.

*Commonwealth v. Bracey*, 541 Pa. 322, 662 A.2d 1062, 1065–1066 (1995). Viewed in this light, appellant's claim fails.

▮ Appellant no longer denies that he had sexual intercourse with J.R., and raises no claim that the victim had the capacity to engage in consensual intercourse. Rather, his argument is that he should be discharged because the victim had some sense of awareness of what was occurring during the assault, as evidenced by her recollection that appellant had touched her and had penetrated her vagina with his penis, and thus that the victim was not "unconscious" within the meaning of the statute. In determining the meaning of "unconscious" as used in the statute, we must construe that term according to common and approved usage. *See* 1 Pa.C.S. § 1902(a). Moreover, our construction of the statute must be consistent with the legislative intent leading to its enactment. *See* 1 Pa.C.S. § 1921. In considering the legislative intent, we are mindful that the "essence of the criminal act of rape is involuntary submission to sexual intercourse." *Commonwealth v. Karkaria*, 533 Pa. 412, 625 A.2d 1167 (1993). Given these considerations, we decline to accept appellant's implication that § 3121(3) protects only those individuals who were completely unaware of the event throughout the duration of the sexual assault upon them. Webster's New World Dictionary, Second College Edition, defines "unconscious" as "not endowed with consciousness." "Consciousness", in turn, is defined as "the state of being conscious; awareness of one's own feelings, what is happening around one, etc." *Id.* The term "conscious" includes "having a feeling or knowledge (of one's own sensations, feelings, etc. or of external things);

knowing or feeling (that something is or was happening or existing); aware; cognizant ... [;] able to feel and think; in the normal waking state...." *Id. See also* Webster's New Collegiate Dictionary, 9th ed. (defining "unconscious" as "not knowing or not perceiving: unaware"). Here, viewing the evidence in the light most favorable to the Commonwealth, J.R., at times during the assault, was unconscious. When the assault began, she displayed no awareness of external events. As the crime progressed, she believed that she was shouting for appellant to stop, but was completely unable to perceive how she was communicating—*i.e.*, that she was merely mumbling. She offered no response when Beck questioned her during the assault. Additionally, although Beck made several statements in J.R.'s presence which were audible to appellant in an effort to convince appellant to stop the assault, J.R., who had no knowledge of what ultimately brought an end to appellant's actions, was unaware of those statements. Her complete lack of awareness of the duration of the assault further indicates that she was not conscious throughout its entirety. Thus, despite her ability to perceive some aspects of the incident, her lack of knowledge of much of what occurred supports the finding that she was unconscious during portions of the assault and was, therefore, unable to consent to sexual intercourse. Because there was ample evidence from which the jury could properly find that the victim, during at least portions of the assault, lacked knowledge or awareness of both her own sensations and external events, and was not in the normal waking state, the evidence was sufficient to support the finding that she was unconscious within the meaning of the statute.

■ Because the evidence supports the findings that the victim was intermittently unconscious throughout the assault[4] and was at all relevant times in such impaired physical and mental condition so as to be unable to knowingly consent, her submission to intercourse was involuntary. That intercourse,

4. Having heard the victim's testimony, the trial court noted that "one has the sense from her testimony that she was sort of drifting in and out somewhat." N.T. 3/9/93, 108.

therefore, is sufficient to constitute rape of an unconscious individual. This conclusion is consistent with the obvious legislative intent behind the statute: to punish sexual intercourse performed upon an individual physically or mentally incapable of consent. To conclude otherwise would mean that 18 Pa.C.S. § 3121(3) does not proscribe intercourse with a person physically and mentally incapable of consent merely because that person, at certain times during the assault but not at others, was able to perceive to some degree what was occurring. Such a result is neither warranted by the plain language of the statute, nor consistent with legislative intent to protect a victim from sexual assault in such situations.

For the foregoing reasons, the order of the Superior Court is affirmed.

NIGRO, J., files a dissenting opinion in which ZAPPALA, J., joins.

NIGRO, Justice, dissenting.

While I condemn Appellant's actions and recognize the egregious nature of the crime Appellant is charged with, under the facts of this case, I find the evidence was insufficient to support a finding that the victim was unconscious pursuant to 18 Pa.C.S. § 3121(3), and, therefore, I am constrained to dissent.

The evidence adduced at trial reveals that the victim testified that she unsuccessfully attempted to tell Appellant to stop throughout the entire assault. While she was unaware of the nature of the assault and why it stopped, she was cognizant that the assault stopped. Viewing those facts, the conclusion that the victim was "unconscious" for purposes of a conviction under § 3121(3) is unsound. The victim's ability to recount details of this episode in her testimony demonstrates that she was not "unconscious".[1]

1. Traditionally, our appellate courts have affirmed convictions under § 3121(3) where the victim was sleeping and awoke while defendant was having intercourse with the victim. *See Commonwealth v. Widmer,* 446 Pa.Super. 408, 667 A.2d 215 (1995), *reversed on separate grounds*

The majority is trying to transform a "conscious" case into an "unconscious" case to support the conviction under § 3121(3). I believe there is a distinction between one who is inebriated and one who is unconscious. Inability to consent to sexual intercourse because of intoxication is not rape within the language of Pennsylvania's rape statute. Under 18 Pa. C.S. § 3121, a person commits a first degree felony when he or she engages in sexual intercourse with a complainant:

(1) By forcible compulsion.

(2) By threat of forcible compulsion that would prevent resistance by a person of reasonable resolution.

(3) Who is unconscious or where the person knows the complainant is unaware that the sexual intercourse is occurring.

(4) Where the person has substantially impaired complainant's power to appraise or control his or her conduct by administering or employing, without the knowledge of the complainant, drugs, intoxicants or other means for the purpose of preventing resistance.

(5) Who suffers from a mental disability which renders the complainant incapable of consent.

(6) Who is less than 13 years of age.

Absent a person's conduct fitting one of the six enumerated subsections, there is no rape. Under the facts of this case, I do not believe the events that occurred properly correspond to any of the subsections of § 3121. Therefore, I believe it is incumbent upon the legislature to review 18 Pa.C.S. § 3121 in order to provide a means to achieve a conviction in matters analogous to the facts of this case. As I find Appellant's conviction under § 3121(3) was improper, I respectfully dissent.

ZAPPALA, J., joins in this dissenting opinion.

547 Pa. 137, 689 A.2d 211 (1997); *Commonwealth v. Price,* 420 Pa.Super. 256, 616 A.2d 681 (1992)