J-A14021-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOON WOO'JASON BAIK | : | No. 1165 WDA 2019 |

Appeal from the Order Entered July 22, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0014919-2018

BEFORE: SHOGAN, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: FILED JANUARY 28, 2021

The Commonwealth of Pennsylvania appeals from the Order granting the Motion for a judgment of acquittal filed by Joon Woo'Jason Baik ("Baik"). We affirm.

The trial court summarized the factual history underlying the instant appeal as follows:

> On September 21, 2018, [Baik] and [Z.W.] (hereinafter referred to as "Complainant") made plans to meet up and go to a local bar together. On her way to meeting [Baik], Complainant realized that she did not have her identification with her[,] so [Baik] and Complainant agreed to go to a liquor store and purchase vodka and whisk[e]y[,] and agreed to take the alcohol back to [Baik's] dorm room to consume. [Baik] and Complainant subsequently drank the vodka and whiskey and watched a movie in [Baik's] dorm room. At some point in the night, [Baik] and Complainant began having sexual intercourse. [Baik] took an audio recording of [Baik] and Complainant engaging in sexual intercourse on his cell phone. Throughout the audio recording, Complainant can be heard saying[,] "Please put it in me—Put it in me[.]" "Please fuck me—Please-Please fuck me" and "Just put

in—G[o]—Go—Just put it in." [Baik] can also be heard repeatedly asking for Complainant's consent to sexual intercourse. At the end of the audio, Complainant is heard screaming "stop" and "I have to go home[,"] and the sexual intercourse stopped. The Complainant was subsequently found outside of [Baik's] dorm building naked. Police and paramedics were called to the scene[,] and Complainant was taken to the hospital. Police and paramedics indicated that Complainant was intoxicated and upset[,] but coherent and provided one-word answers to their questions. At the hospital, Complainant was upset and crying and indicated to police and hospital staff that she had consensual sex with [Baik]. Police interviewed Complainant at the hospital and a police report was subsequently drafted based upon the interview[,] and the report indicated that Complainant, based upon her answers to police questioning, engaged in consensual intercourse with [Baik]. At various times that evening, [Baik] called 911 to inquire about Complainant.

On the following day, Complainant contacted [Baik] to ask what happened and asked [Baik] to go to the university health center with her. [Baik] agreed to accompany Complainant. However, the health center was closed at that time. Complainant then spoke with a friend about the prior evening. Complainant's friend encouraged Complainant to call the police. Complainant alleges that she cannot remember the night prior and/or engaging in sexual intercourse with [Baik]. Complainant then called the police to report that she had been sexually assaulted the previous night by [Baik]. Following an investigation, [Baik] was charged with rape of an unconscious victim, sexual assault, simple assault, and false imprisonment. [See 18 Pa.C.S.A. §§ 3121(a)(3), 3124.1, 2701(a)(1), 2903(a).]

Trial Court Opinion, 11/14/19, at 1-2 (some capitalization omitted).

A jury subsequently found Baik guilty of sexual assault, but not guilty of the remaining charges. Baik filed a Motion for a judgment of acquittal. In his Motion, Baik argued that the evidence established the Complainant's consent to engage in sexual intercourse. Motion for Judgment of Acquittal, 7/12/19, at ¶ 18. Further, Baik argued, the Commonwealth failed to prove that Baik

"knew the victim was unable to make a reasonable judgment as to the nature or harmfulness of the conduct." Id.

On August 20, 2019, the trial court granted Baik's Motion. Thereafter, the Commonwealth filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

The Commonwealth presents the following claim for our review: "Whether the trial court erred in granting [Baik's] Motion for Judgment of Acquittal/Extraordinary Relief?" Commonwealth's Brief at 4.

The Commonwealth argues that Baik's Motion challenged the sufficiency of the evidence. Id. at 18. However, the Commonwealth argues, the trial court failed to apply the appropriate standard for determining such a claim.[1] Id. According to the Commonwealth, the trial court erred by "failing to acknowledge the legitimate inferences the jury was permitted to make, ignoring the circumstantial evidence, and making improper findings of credibility as a result of its disagreement with how the jury interpreted the testimony and physical evidence." Id. at 18. The Commonwealth focuses upon the earlier recorded statements of the Complainant, wherein the Complainant told Baik, "Don't do this[,]" and "Don't you understand? I don't want to fuck." Id. at 25 (citation omitted). The Commonwealth further directs our attention to the Complainant's statement to Baik, "stop doing that[,]"

---

[1] The Commonwealth points out that the defense of intoxication was not available to Baik. Commonwealth's Brief at 18.

immediately before she climaxed. Id. According to the Commonwealth, "[a] long period of time passes and at 1:09:50 [a.m.,] [C]omplainant began to scream that she 'hates' [Baik] and wants him to 'go away,' and appeared to say that she is 'going to die.'" Id. at 26. The Commonwealth asserts that there was sufficient evidence for a jury to find that Complainant "was extremely intoxicated and incapable of consent." Id. at 30. The Commonwealth further directs our attention to evidence of the Complainant's intoxication. Id. at 31-34. The Commonwealth argues that, given the statements by the Complainant "don't do this" and "I don't want to fuck[,]" there is no support for the trial court's determination that Baik stopped the encounter when the Complainant told him to stop. Id. at 35-36.

The Commonwealth also directs our attention to the Complainant's testimony, wherein she explained that she did not initially report the sexual assault because she "didn't understand what happened[.]" Id. at 38. Finally, the Commonwealth quoted the Complainant's testimony wherein she stated that she did not remember what happened. Id. at 38-40. The Commonwealth directs our attention to Commonwealth v. Emey, 698 A.2d 56 (Pa. 1997), as holding that a victim may be "unconscious" for purposes of the assault despite having intermittent periods of awareness and consciousness. Id. at 43. The Commonwealth argues that "there is no doubt that the [Complainant] was extremely intoxicated." Id. at 50. The Commonwealth contends that the trial court ignored evidence that the Complainant was extremely intoxicated

after the incident, and that "[i]t is not an improper inference to assume that she had been much, much more inebriated earlier in the evening." Id.

As this Court has recognized,

A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge.

The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

Commonwealth v. Fitzpatrick, 159 A.3d 562, 567 (Pa. Super. 2017) (citation omitted).

The Crimes Code defines the crime of sexual assault as follows: "Except as provided in [18 Pa.C.S.A. §] 3121 (relating to rape) or [18 Pa.C.S.A. §] 3123 (relating to involuntary deviate sexual intercourse), a person commits a felony of the second degree when that person engages in sexual intercourse … with a complainant without the complainant's consent." 18 Pa.C.S.A.

§ 3124.1. Thus, the Commonwealth must prove the lack of consent beyond a reasonable doubt. See id. Crimes Code section 311(c)(2) provides that consent is not effective if, because of intoxication, the person giving it is "manifestly unable or known by the actor to be unable to make a reasonable judgment as to the nature or harmfulness of the conduct that constituted the offense." Id. § 311(c)(2).

In Emey, our Supreme Court was asked to interpret 18 Pa.C.S.A. § 3121(a)(3) (Rape), and the term "unconscious," as used in that statute. The appellant argued that the statute only protects victims who were "completely unaware of the event throughout the duration of the sexual assault upon them." Emey, 698 A.2d at 59. Our Supreme Court, in rejecting appellant's claim and finding the evidence sufficient, stated the following:

> When the assault began, [the victim] displayed no awareness of external events. As the crime progressed, she believed that she was shouting for appellant to stop, but was completely unable to perceive how she was communicating—i.e., that she was merely mumbling. She offered no response when [] questioned [] during the assault. Additionally [the victim] had no knowledge of what ultimately brought an end to appellant's actions[.] ... Her complete lack of awareness of the duration of the assault further indicates that she was not conscious throughout its entirety. Thus, despite her ability to perceive some aspects of the incident, her lack of knowledge of much of what occurred supports the finding that she was unconscious during portions of the assault and was, therefore, unable to consent to sexual intercourse. Because there was ample evidence from which the jury could properly find that the victim, during at least portions of the assault, lacked knowledge or awareness of both her own sensations and external events, and was not in the normal waking state, the evidence was sufficient to support the finding that she was unconscious within the meaning of the statute.

Id. The Supreme Court concluded that "the evidence support[ed] the findings that the victim was intermittently unconscious throughout the assault and was at all relevant times in such impaired physical and mental condition so as to be unable to knowingly consent, [therefore] her submission to intercourse was involuntary." Id.; see also Commonwealth v. Diaz, 152 A.3d 1040, 1044-45 (Pa. Super. 2016) (interpreting the term "unconscious," for purposes of sections 3121(a)(3) and 3126(a)(4), and finding sufficient evidence of unconsciousness where victim testified she was so intoxicated she was "blacking in and out"; victim remembered some events preceding and during assault, but not all; and victim could not communicate, and felt paralyzed, during assault).

Here, the jury acquitted Baik of the charge of rape of an unconscious person. The trial court further determined that the Commonwealth had failed to establish the lack of consent, beyond a reasonable doubt, based upon the Complainant's intoxication. Trial Court Opinion, 11/14/19, at 9-10. As the trial court sets forth in its Opinion, Baik made an audio recording of the sexual encounter. Id. at 4. In that recording, as quoted by the trial court, the following could be heard:

Complainant: Please put it in—please put it in me.

[Baik]: You want that

Complainant: Yeah. Just want it.

[Baik]: My dick

Complainant: I'm Sorry—

[Baik]: Come back up—Come back up

Complainant: Sorry

[Baik]: Fuck me—Fuck me [name omitted]

Complainant: Don't call me [name omitted]

[Baik]: Fuck me

Complainant: Please-Please-Please

Complainant: Please don't—Please don't do this

[Baik]: Don't do what?

Complainant: Don't do this—Don't do this

[Baik]: [name omitted twice]

Complainant: I don't want to fuck—I don't want to fuck

[Baik]: Ok

Complainant: I don't want to fuck

[Baik]: Ok

Complainant: Do you understand what I mean

[Baik]: Ok

Complainant: I don't want to fuck

[Baik]: Ok

Complainant: But I do want to have sex

[Baik]: [Name omitted]-you are so sexy-you are so sexy

Complainant: I do want to have sex with you but I don't want to be in a relationship—do you know what I mean

[Baik] Ok, [name omitted]-you are so sexy[, name omitted]

Complainant: Do you want to be in a relationship with me?

[Baik]: You don't want to be in a relationship with me—do you-huh[.]

Complainant: Oh please—

[Baik]: What—Please what

Complainant: Please be in a relationship with me. I want to be in a relationship with somebody, but I don't want to be in a relationship with you

[Baik]: [Name omitted]-fuck me-fuck me

Complainant: Get it up

[Baik]: Wait-I don't have a condom

Complainant: Just get a condom

[Baik] Do you want to suck my dick

Complainant: No-I just want to-I just want to

[Baik]: I will get a condom first

Complainant: I just want a condom

[Baik]: You still want to fuck me—right

Complainant: Yeah

[...]

[Baik]: [Name omitted]-wait I need to put my condom on[.] Want to fuck me

Complainant: Please fuck me-please-please fuck me

[Baik]:  [Name omitted]-wait-let's have my condom on-ok-[name omitted] breath[e]

Complainant:  Is it on

[Baik]:  No-it is not.  [Name omitted] do you want to suck my dick[?]  Did you say yes or no

Complainant:  I said no

[Baik]:  You don't want to suck my dick.  Ok

Complainant:  No[.]  Please put it in

[Baik]:  Get my condom

Complainant:  Please[.]  Sorry-I am sorry

[Baik]:  Let's take a little break—ok

Complainant:  Ok—I am sorry

[…]

Complainant:  Just put in-Go-go-Just put it in[.]  Do you want to fuck me

[Baik]:  Yes

Trial Court Opinion, 11/14/19, at 4-7.

Following the above recitation, the trial court stated the following:

As can be heard on the audio recording of the sexual encounter between [Baik] and Complainant, [Baik] initially asks for Complainant's consent and continues to ask for her consent throughout the recording.  [Complainant] provides her consent throughout, both explicitly and implicitly.  [The trial court] believes the Commonwealth failed to present sufficient evidence showing that Complainant's intoxication made her "manifestly unable" to make "a reasonable judgment as to the nature or harmfulness" of sexual intercourse with [Baik].  While it is undisputed that [Baik] and Complainant were drinking the evening of the alleged assault, drinking alcohol, nor intoxication alone does

not equate to invalid consent under Section 311 of the Pennsylvania Crimes Code. [The trial court] was unable to find any published Pennsylvania decisions interpreting Section 311 with respect to mental capacity to consent[,] and its relationship to intoxication[,] outside of the realm of Rape of an Unconscious Victim—where the jury found [Baik] Not Guilty.

\* \* \*

Additionally, the initial police reports following Complainant's first hospital visit indicated that Complainant and [Baik] had consensual intercourse based on the answers that the Complainant herself provided the police. The police who interviewed Complainant that evening did not feel as though Complainant was too intoxicated that she was unable to be interviewed, nor did the police indicate that Complainant's intoxication made the initial police report and Complainant's account of the evening unreliable. To the contrary, Complainant was interviewed[,] and a report was prepared indicating that Complainant and [Baik] had sexual intercourse and that it was consensual. It was not until the following day (and only after a telephone conversation with a friend) that Complainant alleged that the sexual intercourse between herself and [Baik] was not consensual due to an inability to remember the evening. Notably, at trial, Complainant did not testify that she did not consent to having sex with [Baik], she testified that she cannot remember the evening.

Trial Court Opinion, 11/14/19, at 7, 9 (footnote omitted). The trial court's findings are supported by the record.

Here, the Complainant displayed awareness of external events. The Complainant responded to questions asked by Baik throughout the encounter. At trial, Pittsburgh Police Sergeant Timothy Werner ("Sgt. Werner") testified that he spoke with the Complainant when he arrived at the hospital. N.T., 4/30/19, at 44. According to Sgt. Werner, the Complainant affirmed that she had consensual sexual intercourse with Baik, and her account of the evening

- 11 -

matched that of Baik. Id. at 52. Thus, after the event, after being transported to the hospital, the Complainant recollected what had happened, and represented that the sexual intercourse was consensual. See id. Further, as quoted at length by the trial court, the Complainant was able to refuse her consent to oral sex, immediately before requesting and engaging in sexual intercourse. See id. While the Complainant now does not now recall the events, the Commonwealth's evidence does not contradict her statements, after the event, that the encounter was consensual, let alone prove, beyond a reasonable doubt, the lack of consent.

Thus, we agree with the trial court's conclusion that a determination as to the Complainant's consent could only be speculated upon, and not ascertained, beyond a reasonable doubt. For this reason, we affirm the Order of the trial court.

Order affirmed.

Judge Shogan joins the memorandum.

Judge McLaughlin files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/28/2021